[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11589
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00444-VMC-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRADLEY EUGENE ACKERMAN,
a.k.a. Papa Smurf,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 14, 2017)

Before HULL, WILSON, and MARTIN, Circuit Judges.

PER CURIAM:

Bradley Eugene Ackerman appeals the 188-month prison sentence he received after pleading guilty to one count of possessing a firearm and ammunition as a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1), and one count of possessing five grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii).  After careful review, we affirm.

I.

After Ackerman pled guilty to these firearm and drug charges, the probation office prepared a presentence investigation report ("PSR").  The PSR said Ackerman qualified for a longer prison sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because he had previously been convicted in Florida of: (1) aggravated assault (1985); (2) aggravated battery (1986); (3) trafficking in cannabis (1986); and (4) possession with intent to distribute more than fifty grams of methamphetamine (2001).  Based on an adjusted offense level of 31 and a criminal history category of VI, the PSR set Ackerman's United States Sentencing Guidelines ("USSG") range of imprisonment to be 188 to 235 months.

Ackerman objected to the PSR, arguing his aggravated assault, aggravated battery, and trafficking in cannabis convictions did not qualify as ACCA predicates.  At sentencing, the district court overruled Ackerman's objections, adopted the undisputed findings in the PSR, and sentenced Ackerman to a 188-month term of imprisonment for each of his counts, to run concurrently.

2

II.

On appeal, Ackerman argues three of the Florida convictions used to support his ACCA sentence do not qualify as valid predicate offenses.  Specifically, he says under the ACCA, his conviction for trafficking in cannabis does not count as a "serious drug offense," and that his convictions for aggravated assault and aggravated battery do not qualify as "violent felonies."

We review de novo whether a particular offense constitutes a violent felony or a serious drug offense within the meaning of the ACCA.  United States v. White, 837 F.3d 1225, 1228 (11th Cir. 2016) (per curiam); United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).  Under the ACCA, a defendant convicted of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) is subject to a mandatory minimum 180-month prison sentence if he has three prior convictions for either a "serious drug offense" or a "violent felony."  18 U.S.C. § 924(e)(1). The ACCA defines a "serious drug offense" to include any offense under state law "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).

Further, the ACCA defines a "violent felony" as any crime punishable by a term of imprisonment exceeding one year that

(i)     has as an element the use, attempted use, or threatened use of
        physical force against the person of another; or

3

(ii)     is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 924(e)(2)(B)(i)–(ii).  The first prong of this definition, § 924(e)(2)(B)(i), is called the "elements clause."  Owens, 672 F.3d at 968.  The first part of § 924(e)(2)(B)(ii)—"is burglary, arson, or extortion, involves use of explosives"— is known as the "enumerated crimes" clause, and the second part of it—"or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is called the "residual clause."  Owens, 672 F.3d at 968.  The Supreme Court invalidated the residual clause as unconstitutionally vague in Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551, 2557 (2015).  Neither does the enumerated crimes clause apply here because Ackerman's convictions for aggravated assault and aggravated battery are not among the crimes enumerated in § 924(e)(2)(B)(ii).  Thus, Ackerman's aggravated assault and aggravated battery convictions can only qualify as violent felonies for ACCA purposes under the elements clause.

To determine whether Ackerman's convictions are either serious drug offenses or violent felonies under the ACCA, we must apply what is known as the "categorical approach."  Under this approach, we do not look at the facts that resulted in the earlier conviction.  Descamps v. United States, 570 U.S. ___, 133 S. Ct. 2276, 2283 (2013).  Instead, Supreme Court precedent requires us to look only

4

to the elements of the statute under which the person was convicted.  See Mathis v. United States, 579 U.S. ___, 136 S. Ct. 2243, 2251 (2016).  If the "least of the acts criminalized" by the statute does not fall within the definition of a serious drug offense or violent felony provided by the ACCA, then a conviction under that statute cannot serve as an ACCA predicate offense.  Moncrieffe v. Holder, 569 U.S. ___, 133 S. Ct. 1678, 1684 (2013) (quotation omitted and alteration adopted).  Thus, when applying the categorical approach, we must identify the "least culpable conduct" prohibited by the statute of conviction and presume that the defendant's conviction rested on "nothing more" than this conduct.  Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1283 (11th Cir. 2013); Moncrieffe, 133 S. Ct. at 1684 (quotation omitted and alteration adopted).  As part of this step, we must analyze "the version of state law that the defendant was actually convicted of violating." McNeill v. United States, 563 U.S. 816, 821, 131 S. Ct. 2218, 2222 (2011).

On appeal, Ackerman challenges only three of the four convictions the district court found to be qualifying ACCA predicates.[1]  Thus, we may affirm the district court so long as we determine that two of the three convictions challenged by Ackerman can support his ACCA sentence.  Because we believe our precedent dictates that Ackerman's trafficking in cannabis conviction and his aggravated

---

[1] Ackerman did not dispute the PSR's determination that his conviction for possessing fifty grams or more of methamphetamine with intent to distribute was a valid ACCA predicate, and the district court adopted the PSR's undisputed findings at sentencing.  As a result, that conviction serves as a valid ACCA predicate here, and Ackerman does not say otherwise on appeal.

5

assault convictions both serve as valid ACCA predicates under the categorical approach, we affirm his ACCA-enhanced sentence. We explain each finding in turn.

A. TRAFFICKING IN CANNABIS

Ackerman was convicted of trafficking in cannabis in 1986. At that time, the statute under which he was convicted, Fla. Stat. § 893.135(1)(a) (1985 & Supp. 1986), said "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of 100 pounds of cannabis is guilty of a felony of the first degree." That crime carried a maximum sentence of 30-years imprisonment. Id. § 775.082(3)(b) (1985 & Supp. 1986).

Ackerman says his conviction under § 893.135(1)(a) did not qualify as a serious drug offense under the ACCA—that is, it did not "involv[e] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," 18 U.S.C. § 924(e)(2)(A)(ii)—because it "contains no mens rea element to manufacture or distribute." However, this argument is foreclosed by our decision in United States v. James, 430 F.3d 1150 (11th Cir. 2005), overruled on other grounds by Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015). In James, this Court considered whether Florida's cocaine trafficking statute, Fla. Stat. § 893.135(1)(b), could qualify as a serious drug offense even

though that statute, like Florida's cannabis trafficking statute here, did not require the state to prove an intent to manufacture or distribute the controlled substance on the part of the defendant. See id. at 1154. The James panel held the ACCA's use of the word "involving" meant that "state offenses that do not have as an element the manufacture, distribution, or possession of drugs with intent to manufacture or distribute" could still qualify as serious drug offenses under the ACCA. Id. at 1155. Further, it concluded courts could infer that a defendant who was convicted under the cocaine trafficking statute had an intent to distribute cocaine from (1) the quantity of cocaine a defendant must possess in order to violate the trafficking statute; and (2) the trafficking statute's placement as the most serious crime in a three-tiered scheme in which trafficking carried more severe penalties than both mere possession and possession with intent to distribute. Id. at 1154–55.

This case presents a very similar situation. At the time Ackerman was convicted of trafficking in cannabis, the statute prohibited actual or constructive possession of 100 pounds of cannabis. Fla. Stat. § 893.135(1)(a) (1985 & Supp. 1986). Further, trafficking in cannabis carried more severe penalties than possessing cannabis with intent to distribute. Compare id. (classifying trafficking in cannabis as a first-degree felony), with id. § 893.13(1)(a)(2) (classifying possessing cannabis with intent to distribute as a third-degree felony). Based on these factors, under James Ackerman's trafficking in cannabis conviction

7

"involv[ed] . . . possessi[on] with intent to manufacture or distribute" a controlled substance within the meaning of the ACCA.  18 U.S.C. § 924(e)(2)(A)(ii).

Ackerman also seems to argue his trafficking conviction cannot be a serious drug offense under the ACCA because the trafficking statute did not require the state to prove that the defendant knew the illicit nature of the substance he possessed.  However, this Court has held that the ACCA's definition of a serious drug offense does not require the state drug statute in question to have an "element of mens rea with respect to the illicit nature of the controlled substance."  United States v. Smith, 775 F.3d 1262, 1267 (11th Cir. 2014).  As a result, this argument is also foreclosed by precedent.

Finally, Ackerman asserts that under the categorical approach, the "least culpable conduct" criminalized by the Florida cannabis trafficking statute at the time of Ackerman's conviction was purchasing cannabis.  Donawa, 735 F.3d at 1283.  Thus, he says his conviction under that statute cannot serve as an ACCA predicate because this Court's decision in United States v. Shannon, 631 F.3d 1187 (11th Cir. 2011), shows that purchasing cannabis does not fall within the ACCA's definition of a serious drug offense.  See id. at 1189–90 (holding that purchasing cocaine would not qualify as a "controlled substance offense" under USSG § 4B1.2(b)).  However, the version of the trafficking statute that Ackerman was convicted of violating, Fla. Stat. § 893.135(1)(a) (1985 & Supp. 1986), did not

8

prohibit the mere purchase of cannabis.  That statute was not amended to criminalize purchasing cannabis until 1987—the year after Ackerman was convicted.  See 1987 Fla. Laws 1622.  Thus, at the time Ackerman was convicted under the cannabis trafficking statute, the least culpable conduct criminalized by that statute was possessing 100 pounds of cannabis.  See Fla. Stat. § 893.135(1)(a) (1985 & Supp. 1986).  And as we explained above, possessing 100 pounds of cannabis "involv[es]" an intent to manufacture or distribute within the meaning of the ACCA because of the high quantity of cannabis and the fact that a cannabis trafficking conviction carried harsher penalties than a conviction for possessing cannabis with intent to distribute.  See James, 430 F.3d at 1154–55.

B.  AGGRAVATED ASSAULT

Ackerman's argument that his Florida aggravated assault conviction was not a violent felony is foreclosed by our decision in Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328 (11th Cir. 2013), abrogated on other grounds by United States v. Hill, 799 F.3d 1318 (11th Cir. 2015).  There, we held that a 1981 aggravated assault conviction under Fla. Stat. § 784.021[2] falls within the elements clause definition of a violent felony under the categorical approach because it has "as an element the . . . threatened use of physical force against the person of another."  Id. at 1338; see 18 U.S.C. § 924(e)(2)(B)(i).  Ackerman says Turner's

---

[2] Fla. Stat. § 784.021 has not been amended since 1975.

9

"continuing viability" is "in question in light of the Supreme Court's decisions" in Descamps, 133 S. Ct. 2276, and Johnson, 135 S. Ct. 2551, and wishes to preserve that issue for further appellate review.  Recently, this Court reaffirmed Turner's aggravated assault holding against the same challenge, stating that "even if Turner is flawed, that does not give us, as a later panel, the authority to disregard it." United States v. Golden, 854 F.3d 1256, 1257 (11th Cir. 2017) (per curiam).  Thus, we must apply Turner "unless and until [its] holding is overruled by the Court sitting en banc or by the Supreme Court."  Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).  As a result, Ackerman's aggravated assault conviction can serve as a valid ACCA predicate offense.

## III.

Based on the foregoing analysis, Ackerman has at least three qualifying predicate offenses that support the lengthened sentence he received under the ACCA.  As a result, we affirm his sentence.

**AFFIRMED.**